United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MELVIN GUILLEN,
Plaintiff,
v.
UG2, LLC,
Defendant.

Case No. 5:26-cv-02766-PCP

**ORDER GRANTING MOTION TO REMAND**

Re: Dkt. No. 6

Plaintiff Melvin Guillen, a former employee of UG2, filed this putative state-law wage and hour class action in Santa Clara County Superior Court. UG2 subsequently removed the case to federal court, asserting that this Court has jurisdiction under the Class Action Fairness Act ("CAFA") 28 U.S.C. § 1332(d)(2). Guillen moves to remand for lack of subject matter jurisdiction. Because UG2 failed to plausibly allege that the amount in controversy exceeds $5,000,000, the motion to remand is granted.

## LEGAL STANDARDS

A defendant may remove a case from state court to federal court only if the federal court would have originally had subject matter jurisdiction over it. 28 U.S.C. § 1441(a); *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

The Class Action Fairness Act of 2005 (CAFA) gives federal courts jurisdiction over class actions where there are at least 100 class members, at least one plaintiff is diverse in citizenship from any defendant, and the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(2),

(d)(5)(B); *see Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015).

The removing party bears the burden of establishing that CAFA's jurisdictional requirements have been met. *Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 683-685 (9th Cir. 2006); *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021-22 (9th Cir. 2007). The removing party must file a notice of removal containing a short and plain statement of the grounds for removal, 28 U.S.C. § 1446(a), which must include a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *De Vega v. Baxter Healthcare Corp.*, 507 F. Supp. 3d 1214, 1216 (N.D. Cal. 2019) (quoting *Ibarra*, 775 F.3d at 1197).

In determining the amount in controversy, courts first look to the allegations in the complaint. *Ibarra*, 775 F.3d at 1197. If the complaint does not state the amount in controversy, the defendant's notice of removal may do so. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014). If the amount in controversy alleged by the defendant is contested by the plaintiff or questioned by the court, the defendant must show by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold. *Id.* at 82, 88. "The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

Defendants may make reasonable assumptions when calculating the amount in controversy. *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022). But "[m]ere speculation and conjecture" are insufficient to establish removal jurisdiction. *Ibarra*, 775 F.3d at 1197; *see also id.* at 1199 ("[A]ssumptions cannot be pulled from thin air but need some reasonable ground underlying them."); *Salazar v. Johnson & Johnson Consumer Inc.*, No. 2:18-CV-05884, 2018 WL 4560683, at *3 (C.D. Cal. Sept. 19, 2018) ("Courts have routinely remanded cases where amount in controversy calculations rely on speculative assumptions unsupported by evidence."); *Contreras v. J.R. Simplot Co.*, No. 2:17-CV-00585, 2017 WL 4457228, at *2 (E.D. Cal. Oct. 6, 2017) ("When the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and its underlying

assumptions must be reasonable, and not constitute mere speculation and conjecture."). Assumptions can, however, "be founded on the allegations of the complaint and do not necessarily need to be supported by evidence." *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025) (cleaned up). "[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co.*, 574 U.S. at 89.

**ANALYSIS**

To determine if removal was proper, the Court must assess whether this case meets CAFA's threshold requirements. It is uncontested that the class size requirement is met, as the proposed class consists of at least 100 employees. The parties disagree, however, about whether the amount in controversy exceeds $5,000,000.[1]

Guillen asserts nine causes of action against UG2, all of which are relevant in calculating the amount in controversy: (1) failure to pay all overtime wages; (2) minimum wage violations; (3) failure to reimburse for necessary business-related expenses; (4) meal period violations; (5) rest period violations; (6) waiting time penalties; (7) wage statement violations; (8) violations of Business & Professions Code section 17200; and (9) civil penalties under the Private Attorneys General Act. Guillen's proposed class consists of all non-exempt employees who worked for UG2 within the past four years before the complaint was filed. Defendant estimates that at least 1,307 employees make up the class.

**I. Amount in Controversy**

Plaintiff's complaint does not specify an amount in controversy. As a result, to satisfy its initial burden of establishing this Court's jurisdiction, UG2 needed only to "allege in its notice of removal that the amount in controversy requirement is met." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020). UG2 did so, estimating that the total amount in controversy was

[1] Guillen also contends that the minimal diversity requirement is not satisfied but the record shows that at least one putative class member is a citizen of California while UG2 is a citizen of Massachusetts. *See Jack v. Ring LLC*, 553 F. Supp. 3d 711, 715 (N.D. Cal. 2021) (concluding that an LLC's citizenship under CAFA is determined by its state of incorporation and principal place of business).

$7,901,865: $141,558 for unpaid regular wages, $40,641 for overtime, $2,548,650 for section 558 penalties, $283,116 for liquidated damages, $270,982 for meal period premiums, $270,982 for rest period premiums, $2,548,650 in wage statement penalties, and $1,797,286 for waiting time penalties. It also estimates an additional $1,975,466 in attorneys' fees, bringing the total amount in controversy to $9,877,331. To reach these values, UG2 estimated there were 1,307 employees between 2022 and 2026 who worked an average hourly wage of $20.63.

Guillen, in turn, argues that the assumptions UG2 made when calculating the amount in controversy were unreasonable. There are several alleged errors with UG2's amount in controversy assumptions, including (1) unreasonably applying a 100% violation rate for Section 558 penalties, (2) improperly double-counting liquidated damages, and (3) failing to compensate for the 1-year statute of limitations for Section 558 penalties and wage statement penalties. The Court will consider the reasonableness of UG2's estimates for each category of potential monetary recovery in order to determine whether it has satisfied its burden to establish this Court's jurisdiction.

### A. Minimum wage and overtime claims

The complaint alleges that employees "routinely worked in excess of 8 hours per workday" without receiving overtime compensation. UG2 estimates that the amount in controversy for unpaid minimum wages and overtime claims is $141,558 and $40,641, respectively. To make these estimates, UG2 assumed each employee was underpaid by thirty minutes of regular pay once per month and worked six minutes of unpaid overtime once per month. UG2 then calculated the amount in controversy by using the $20.63 average hourly wage rate set out in declaration testimony.

Plaintiffs argue that UG2's assumptions are unreasonable because they are not supported by evidence. But evidence is not always required to prove the reasonableness of an assumed violation rate. As the Ninth Circuit clarified, "it makes little sense to require a CAFA defendant to introduce evidence of the violation rate ... because the defendant likely believes that the real rate is zero and thus that the evidence does not exist." *Perez*, 131 F.4th at 808. Thus, a defendant may make reasonable assumptions based on the language of the complaint.

Based on the allegations in the complaint, UG2's assumptions are both reasonable and relatively conservative. Courts in this Circuit routinely allow violation rate assumptions as high as thirty minutes per week when a complaint alleges "routine" violations. *See Arias v. Residence Inn*, 936 F.3d 920, 923 (9th Cir. 2019) (concluding that allegation that Marriott "routinely" failed to pay its employees overtime wages justified a 30-minute-per-week violation rate assumption); *Sutton v. Staffing Synergies, Inc.*, No. EDCV 26-1100 JGB (DTBX), 2026 WL 1497437, at *3 (C.D. Cal. May 28, 2026) (concluding that allegation that conduct was "routine and recurring" was sufficient to support a violation rate of 2.5 hours of unpaid overtime per week); *see Aguilar v. Freedomsroads LLC*, No. 4:25-CV-05132-SAB, 2026 WL 674378, at *2 (E.D. Wash. Mar. 10, 2026) ("When a plaintiff uses generic phrasing—e.g. 'at times,' 'routinely,' and 'common course'—in describing alleged violation rates, defendants have greater latitude in estimating the amount in controversy."). Here, defendants have applied a much more conservative estimate of 30 minutes of unpaid regular time work and 6 minutes of unpaid overtime work *per month*. In the absence of additional limiting language in the complaint, that assumption is reasonable given the "routine" practice alleged.[2]

**B. Section 558 penalties**

Labor Code Section 558 subjects employers who violate or cause to be violated any order of the Industrial Welfare Commission (IWC) to civil penalties. Cal. Lab. Code § 558(a). Based upon the minimum wage and overtime assumptions discussed above, UG2 calculates $2,548,650 in penalties could be owed pursuant to Section 558. Using declaration evidence from an employee with knowledge of staffing, UG2 estimates that each employee worked approximately 10.5 months over the 4-year period. Because pay periods occur twice per month, UG2 assumed employees worked an average of 20 pay periods. In its notice of removal, UG2 assumes a violation occurred in 100% of pay periods and affected all potential class members over a 4-year period, which it asserts includes at least 1,307 non-exempt employees. The total was calculated using the standard 558 penalty fines of $50 for the first violation, and $100 for each subsequent

[2] Given the conservative nature of UG2's estimate, it is also reasonable to assume that each employee experienced such a loss at least once per month, or every other pay period.

United States District Court
Northern District of California

violation.

Based on the other assumptions UG2 has used to estimate the amount-in-controversy, however, its assumption that each employee experienced a violation during each pay period is unreasonable. UG2 assumes each employee was underpaid by thirty minutes of regular pay once per month and worked six minutes of unpaid overtime once per month. But even if these violations occurred in separate weeks, at most only two out of four weeks in the month would be affected. Because only half of the weeks in each month are estimated to contain a wage violation, it would be reasonable to assume that section 558 penalties were applicable to only half of the pay periods employees worked.

Further, in estimating the amount in controversy for section 558 penalties, UG2 failed to account for the 1-year statute of limitations. *See Taylor v. Interstate Grp., LLC*, No. 15-CV-05462-YGR, 2016 WL 861020, at *5 (N.D. Cal. Mar. 7, 2016). UG2 concedes this was an error, and that the 1,307 employees include all non-exempt employees over a 4-year period. Because there is no data provided either in the complaint or in evidence submitted by UG2 on the exact number of employees in the past year, the Court instead reduces the number of employees by 75% to account for this error. As a result, statutory penalties per employee are calculated at ($50 + $100 x 9 pay periods) = $950, multiplied by one quarter of the total employees over the 4-year period (1307 x 0.25) for a new total of $310,412.50.

**C. Liquidated damages**

An employee who has not been paid the legal minimum wage may recover liquidated damages equal to the unpaid wages and accrued interest. Cal. Lab. Code §§ 1194(a), 1194.2(a). UG2 calculates liquidated damages at $283,116 ($141,558 in unpaid wages x 2). This calculation, however, improperly double-counts the unpaid wages, which were already included in the above wage and overtime damages. Instead, the proper total is $141,558.

**D. Meal and rest period premiums**

When calculating the meal and rest period premiums, UG2 assumes that every class member missed one meal period per month. Relying on a $20.63 average hourly rate and estimating that each class member worked for 10.5 months, UG2 calculated an amount in

controversy for meal period premiums of $270,982 (10.5 months x 1 meal period x 20.63 hourly rate x 1,307 employees). The assumptions and calculations are identical for rest period violations.

Plaintiff contests this calculation as lacking evidentiary support. But there is no requirement to include further evidence as to the specific number of violations. "[I]t makes little sense to require a CAFA defendant to introduce evidence of the violation rate." *Perez*, 131 F.4th at 808. Additionally, defendants' assumptions are reasonable and tied to the language of the complaint, which alleges "systemic" missed meal periods and "uniform" unlawful rest period policies. *See Agdeppa v. C & J Clark Retail, Inc.*, No. 25-CV-10862-JSC, 2026 WL 874686, at *6-7 (N.D. Cal. Mar. 30, 2026) (where "uniform" policies of breaks allowed an assumption of one meal and rest break violation per workweek). A once-per-month assumption is equivalent to about a 5% violation rate, more conservative than the 20% (or once-per-week) rate often allowed by this District for similar allegations. *See Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 911 (N.D. Cal. 2016) (holding that a weekly rate was a reasonable estimate when the plaintiff alleged a "policy or practice" of meal and rest break violations); *Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-CV-00719-NC, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019) ("Courts in this Circuit, including in this District, have frequently upheld at least a 20% violation rate…where the plaintiff does not specify the frequency of the alleged missed meal or rest periods."). Given the language in the complaint, UG2's assumptions for meal and rest period premiums are reasonable.

**E. Wage statement penalties**

When an employer fails to provide complete and accurate wage statements to employees, it faces a penalty of $50 per initial pay period and $100 for each subsequent pay period with an aggregate cap of $4,000 per employee. Cal. Lab. Code § 226(e). Wage-statement violation claims are derivative of other alleged violations in the complaint, such as failure to compensate for time worked. *Nisbet v. S. Tire Mart, LLC*, No. 5:24-CV-07653-PCP, 2025 WL 1135091, at *4 (N.D. Cal. Apr. 16, 2025). If the assumed violation rates are reasonable, it is reasonable to use them to calculate the amount in controversy for wage statement violations.

Here, the penalties are derivative of the previously discussed allegations in the complaint.

Because UG2's assumptions are reasonable for the unpaid wage, overtime, meal, and rest period violations, it is therefore reasonable to assume that at least one violation occurred in each of the two pay periods per month for non-exempt employees. *See Holcomb v. Weiser Sec. Servs., Inc.*, 424 F. Supp. 3d 840, 846 (C.D. Cal. 2019). Therefore, UG2's 100% violation rate across eligible pay periods is reasonable. *Id.*

However, UG2 erred in including all potential employees across a four-year period, as the penalty provision of section 226 is subject to a one-year statute of limitations. *Novoa v. Charter Commc'ns, LLC*, 100 F. Supp. 3d 1013, 1024 (E.D. Cal. 2015) (citing Cal. Civ. Proc. Code § 340). Because UG2 failed to provide specific data or records on the non-exempt employees in the past year, the Court assumes that the total number of employees due wage statement penalties is one-fourth of UG2's estimate. This shifts the total potential wage statement penalties from $2,548,650 to $637,162.50.

**F. Waiting time penalties**

An employer must pay all wages immediately upon termination of employment. Cal. Lab. Code §§ 201-203. Cal. Lab. Code § 203 imposes mandatory waiting time penalties on an employer who fails to pay all wages due at the time of an employee's resignation or termination beginning on the date of separation and continuing for up to 30 days. *Id.* Plaintiff's complaint alleges that UG2 "failed to timely pay Plaintiff all of Plaintiff's respective final wages at the time of termination, which include, among other things, underpaid overtime and minimum wages, and meal and rest period premium wages." Further, the complaint alleges that this "willful failure to timely pay Plaintiff and the members of the Waiting Time Class their earned wages upon separation from employment results in a continued payment of wages up to thirty (30) days from the time the wages were due."

From 2022 to 2026, there were 363 non-exempt employees formerly employed by UG2. In its calculation of waiting time penalties, UG2 assumes a 100% violation rate, including all former employees over the four-year period, and assumes a full 30-day violation for each employee for a total of $1,797,286 (363 former employees x 30 days x $165.04 per day). This rate assumes each employee worked exactly 8 hours.

Courts in the Ninth Circuit routinely accept a 100% violation rate where the "plaintiff has (1) tied waiting-time penalties to other claims and (2) the defendant specifically accounts for only terminated employees." *Solonga v. Aegis Senior Cmtys., LLC*, No. 22-CV-00525-LB, 2022 WL 1439914, at *4 (N.D. Cal. May 6, 2022) (collecting cases). Because UG2 tied their estimates to the other reasonable claims, such as "underpaid overtime and minimum wages, and meal and rest period premium wages," and accounted only for terminated employees, UG2's assumptions here are reasonable. Additionally, if a plaintiff requests the maximum statutory penalty, it is reasonable for a defendant to assume that the plaintiff could obtain that maximum. *Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1188 (E.D. Cal. 2020); *see also Thornhill v. McLane Foodservice, Inc.*, 816 F. Supp. 3d 1006, 1014 (N.D. Cal. 2026) ("Defendant further assumes that every terminated employee will seek to recover the maximum 30-day waiting time penalty…These assumptions are reasonable because if a terminated employee experienced any violation alleged in the complaint, that employee was underpaid and thus did not receive all wages due at the time of their termination."). Thus, UG2's estimate of $1,797,286 in waiting time penalties is reasonable.

**G. Attorneys' fees**

UG2's notice of removal did not include calculations for additional claims made in the complaint, including unreimbursed business expenses, unfair competition, civil penalties under the Private Attorneys General Act, or attorneys' fees. Revising UG2's calculations to address the errors identified above as to the categories included in the notice brings the amount in controversy well below $5,000,000 to $3,610,582.

Accordingly, if the Court were to look only to the notice of removal, remand would be required. But UG2 "may amend a deficient notice of removal through its opposition to a motion to remand." *Bratton v. FCA US LLC*, No. 17-CV-01458-JSW, 2017 WL 11687946, at *7 (N.D. Cal. June 22, 2017); *see ARCO Envtl. Remediation, L.L.C.*, 213 F.3d at 1117 (holding that a defendant may amend the Notice of Removal after the thirty-day window has closed to correct a "defective allegation of jurisdiction."). UG2 does so in its opposition to remand, estimating that plaintiffs' entitlement to attorneys' fees adds an additional 25% to the amount in controversy. This amendment does not prevent remand, however, for two reasons.

First, even if attorneys' fees in an amount equal to 25% of the value of the other claims are added to the amount in controversy, the total amount in controversy is only $4,513,227.50 and thus still below the $5,000,000 threshold. While UG2 claims that including unreimbursed business expenses, unfair competition, and civil penalties under the Private Attorneys General Act would further drive up the total amount in controversy, it bears the burden to provide reasonable estimates of those amounts based on the allegations of the complaint. Having not provided the Court with any basis for making such estimates, UG2 cannot ask the Court to include them in the amount in controversy. *See Perez v. GoMacro, LLC*, No. 25-CV-09890-PCP, 2026 WL 710234, at *3 (N.D. Cal. Mar. 13, 2026) ("Without any estimate of what those aggregated costs will be, the possibility of aggregation alone does not plausibly suggest that the cost to comply with injunctive relief will exceed (or even approach) $5 million.").

In addition, UG2's estimate of the amount of attorneys' fees at issue here unreasonably relies upon a common fund percentage-of-the-recovery method of calculating fees even though this is a statutory fee-shifting case governed by the lodestar method. *See Lopez v. Advanced Drainage Systems, Inc.*, 777 F. Supp. 3d 1100, 1109–10 (N.D. Cal. 2025). For that separate reason, the Court cannot include UG2's fees estimate in its calculations.

**CONCLUSION**

Based on reasonable assumptions, the estimated total potential amount in controversy is as follows: $141,558 for unpaid regular wages, $40,641 for overtime, $310,412.50 for section 558 penalties, $141,558 for liquidated damages, $270,982 for meal period premiums, $270,982 for rest period premiums, $637,162.50 in wage statement penalties, and $1,797,286 for waiting time penalties, bringing the total estimated amount in controversy supported by the record before the Court to $3,610,582.00. Because this amount falls below CAFA's $5,000,000 threshold, Guillen's motion to remand is GRANTED. The Court remands this case to Santa Clara County Superior Court.

**IT IS SO ORDERED.**

Dated: September 1, 2026

P. Casey Pitts
United States District Judge

United States District Court
Northern District of California